IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:03CV155

| | |
|---|---|
| DIRECTV, INC., | ) |
|       Plaintiff, | ) |
| | )     ORDER |
| vs. | ) |
| EARL BAXTER TRIVETTE, | ) |
|       Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff's "Amended Motion for Default Judgment Against Defendant Trivette, and for Certification of Final Judgment," and "Plaintiff's Memorandum of Law in Support of its Amended Motion for Entry of Default Judgment Against Defendant Trivette," both filed June 6, 2005. (Documents ## 17, 18). Defendant Earl Baxter Trivette ("Defendant") did not respond nor has he otherwise appeared in this matter.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Directv, Inc. ("Directv") is a direct broadcast satellite provider. (Compl. ¶ 2). Directv's Satellite Programming is received by Directv subscribers through the use of a fixed outdoor satellite dish, which is connected by cable to an indoor satellite receiver. (*Id.*). An individual cannot receive Directv's signal without paying a subscription fee. (*Id.* ¶ 3). In order to prevent the unauthorized receipt and use of its Satellite Programming, Directv uses encryption technology to scramble the signal, thereby making the signal unusable until it is unscrambled. (*Id.*). Once a Directv customer pays a subscription fee, the satellite signal is unscrambled and the customer can receive Directv's Satellite Programming. (*Id.* ¶ 4).

1

Despite the encryption technology used by Directv, individuals have created devices and equipment (collectively referred to as "Pirate Access Devices") to surreptitiously pirate Directv's signal without paying Directv's subscription fee. ( *Id.* ¶ 5). Consequently, Directv has attempted to stop the sale and distribution of these Pirate Access Devices by executing writs of seizure on businesses that sell these Devices and then bringing lawsuits, such as this one, against the individuals who purchased and allegedly used and/or distributed Pirate Access Devices. This case is just one out of over one hundred that have been filed in this Court.

On December 1, 2001, Directv conducted a raid that resulted in execution of Writs of Seizure on the business and residence of Scott Gray, "The Computer Shanty (Shanty.com)." (*Id.* ¶ 7). As a result of the business records obtained through the execution of these Writs, Directv learned that Defendant purchased various Pirate Access Devices. (*Id.* ¶ 20). Specifically, Defendant purchased: (1) one "UL PRO X Super Unlooper" from Computer Shanty; (2) three "Emulator complete with cables" from Computer Shanty; and (3) two "Netsignia 210 Programmer" from Computer Shanty. ( *Id.*). Consequently, on December 1, 2003, Directv filed a Complaint, alleging the following causes of action against Defendant: (1) violations of the Cable Communications Policy Act, pursuant to 47 U.S.C. § 605(a); (2) violations of 18 U.S.C. § 2511; (3) willful assembly or modification of devices or equipment, in violation of 47 U.S.C. § 605(e)(4); (4) theft of telecommunication service, in violation of N.C. Gen. Stat. § 14-113.5; (5) interception and disclosure of electronic communications, pursuant to N.C. Gen. Stat. § 15A-287; (6) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1; and (7)

civil conversion.[1] Directv seeks injunctive relief, statutory damages or actual damages, punitive damages, and reasonable attorneys' fees and costs. On April 8, 2004, Directv served the Summons and Complaint on Defendant.

On October 19, 2004, in light of the fact that Defendant had not answered the Complaint or otherwise appeared in this matter, Directv filed a Motion for Entry of Default and on October 20, 2004, the Clerk entered default against Defendant. Directv now seeks to have default judgment entered against Defendant. Directv further asks the Court to award statutory damages of $10,000 for Defendant's violation of 47 U.S.C. §§ 605(a), 605(e)(3)(C), 605(e)(3)(B), 18 U.S.C. § 2511, and 18 U.S.C. § 2520(c)(B)(2)(b), as well as attorneys' fees and costs in the amount of $738.96. (Pl. Mem. In Supp. p. 1). Directv also asks the Court to "permanently enjoin Defendant, Defendant's employees, agents, servants, successors and assigns, and any other person acting in concert with any of them, from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511." (*Id.* p. 6).

## II. DISCUSSION

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and after the clerk has entered default against such party, the opposing party is entitled to move for default judgment. *See* FED. R. CIV. P. 55. Moreover, "[a]verments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." FED. R. CIV. P. 8(d). However, "'a default is not treated as an absolute

---

[1] Plaintiff's Complaint originally asserted a claim for damages for possession, manufacture, and/or assembly of electronic, mechanical or other device or equipment, in violation of 18 U.S.C. § 2512. However, on June 14, 2004, Directv filed a Motion to Amend Complaint, in which Directv sought to dismiss this claim. On June 16, 2004, the Court granted Directv's Motion to Amend and dismissed Count Three of the Complaint.

3

confession by the defendant of his liability and of the plaintiff's right to recover.'" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

**A.     Violation of 18 U.S.C. § 2511**

**1.     Statutory damages**

Section 2511 of the Wiretapping Act prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Section 2520, which is also part of the Wiretapping Act, provides the civil damages remedy for violations of 18 U.S.C. § 2511. Section 2520(a) provides, in relevant part, as follows:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which is engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

As noted above, upon entry of default the allegations in the complaint, except those relating to damages, are taken as true. Since default has been entered against Defendant, the Court takes as true the allegation that Defendant purchased: (1) one "UL PRO X Super Unlooper" from Computer Shanty; (2) three "Emulator complete with cables" from Computer Shanty; and (3) two "Netsignia 210 Programmer" from Computer Shanty, and "intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from Directv." (Compl. ¶¶ 20, 33). Directv has, therefore, established a valid claim under Section 2511 and is entitled to default judgment on this claim.

Having concluded that default judgment is warranted on this claim, the Court must now turn to the issue of damages. Damages for violations of Section 2511 are provided for by Sections 2520(b)(2) and (c)(2), which provide:

> **(b)** In an action under this section, appropriate relief *includes*: . . . (2) damages under subsection (c) and punitive damages in appropriate cases . . .
>
> **(c)(2)** In any other action under this section, the court *may* assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each violation or $100,000.

18 U.S.C. §§ 2520(b)(2), (c)(2) (emphasis added).

The language of this statute has led various courts, including the Fourth Circuit, to conclude that an award of damages is permissive, as opposed to mandatory. *See Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995) (concluding that the use of the word "may" indicates that "Congress intended to confer upon district courts the discretion to decline to award damages in applying § 2520(c)(2)"); *see also Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999) (noting that the plain language of Section 2520 gives district courts the discretion to decline to impose damages); *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996) (affirming district court's finding that damages under the wiretapping statute are discretionary, as evidenced by the use of the word "may"); *Directv v. Brown*, 371 F.3d 814, 818-19 (11th Cir. 2004) (agreeing with the Fourth, Sixth, and Eighth Circuits that the use of the word "may" in Section 2520(c)(2) means that an award of damages under this statute is discretionary). Therefore, even if there has been a violation of Section 2511, the Court may, in its discretion, refuse to award any damages under Section 2520(c)(2).

5

> In determining whether to award such damages
>
> > . . . a district court should make an individualized assessment of each defendant. Factors that may be considered include whether the plaintiff suffered financial harm, the extent to which a violation occurred and unlawfully intercepted signals were disclosed, whether the defendant had a legitimate reason for his or her actions, whether the defendant profited from his or her acts, and whether an award of damages would serve a legitimate purpose.

*Directv, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 790 (E.D. Mi. 2004); *see also Nalley*, 53 F.3d at 653-54 (denying an award of damages to plaintiff pursuant to 18 U.S.C. § 2520(c)(2) after considering whether plaintiff suffered financial loss and whether defendant received a profit).

In exercising this discretion in the instant case, the Court concludes that damages are not appropriate. Directv has not offered any evidence about the financial harm it suffered as a result of Defendant's actions. Aside from potentially receiving Directv's satellite television programming for free of charge for a period of time, there is no indication that Defendant otherwise profited from his conduct. There is no evidence that Defendant used the device for commercial purposes or purchased the device for resale. There are no allegations that Defendant induced others to commit similar violations. Although Directv alleges that "[t]he value of the programs that Defendant was *capable of viewing* without authorization may easily reach $100,000 in a single year," [2] there is no allegation as to how long Defendant actually used the devices or the dollar amount Directv would have received in subscription fees but did not obtain as a result of Defendant's activity. There is no evidence of the amount of Defendant's actual personal use of the devices. Therefore, the Court denies Directv's request for statutory damages arising from Defendant's violation of Section 2511.

---

[2]Compl. ¶ 22 (emphasis added).

## 2. Attorneys' fees and costs

While an award of statutory damages may serve the legitimate and useful purpose of deterrence, the Court finds that this purpose can be met by an award of costs and attorneys' fees. Section 2520 allows a court to award "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. §§ 2520(b)(3).

Although the Court finds that Directv is not entitled to damages for a violation of § 2511, the Court will order Defendant to pay reasonable attorneys' fees and costs to Directv. Directv submitted Affidavits of Leslie O'Toole, Patricia Kerner, and Felix Chevalier to prove the attorneys' fees and costs incurred in this matter.[3] These Affidavits state that Directv has incurred legal fees in an amount of $498.96 and costs in the amount of $240.00. A review of previous default judgments and corresponding affidavits filed by Directv lead this Court to conclude that the requested legal fees should be modified in certain respects.[4] The Court will award Directv

---

[3] The Court notes that Plaintiff attached these Affidavits to its initial Memorandum of Law in Support of its Motion for Entry of Default Judgment but did not attach the Affidavits to its Amended Motion for Entry of Default Judgment or its Memorandum of Law in Support of its Amended Motion for Entry of Default Judgment. Nevertheless, the Court will consider these Affidavits in deciding the amount of costs and attorneys' fees to which Plaintiff is entitled.

[4] After a review of the numerous motions for default judgment filed by Directv, the Court concludes that in this case, Directv is entitled to $240.00 in costs ($90 for the service fee and $150 for Defendant Trivette's *pro rata* share of the filing fee) and $319.96 in attorneys' fees. The Court's award of $319.96 in attorneys' fees is based on past filings by Directv and its allegations regarding the time it generally takes a paralegal and attorney to review the complaint, draft the motion for entry of default, and draft the motion for default judgment. In light of the numerous filings of such motions and the almost identical language in those motions, the Court finds it difficult to believe that substantial time is spent by Directv in drafting its motions for entry of default and default judgment. Moreover, the Court notes that with every motion for default judgment filed by Directv, Plaintiff includes an affidavit by either Felix Chevalier or Robert Swofford, both of whom work with the law firm of Greer, Herz & Adams, L.L.P. In almost every affidavit by Mr. Chevalier and Mr. Swofford that this Court has seen, they contend that Directv has "incurred and been billed at least $36.96 in attorney's fees . . . [and] Directv has incurred an additional $60.00 which has not been billed." No further explanation is given as to how those amounts were determined, such as the per hour rate of the attorney reviewing the file. In the instant case, the Affidavit of Felix Chevalier alleges that Directv has incurred and been billed at least $39.96 in attorney's fees, plus an additional $60, which has not yet been billed. Consequently, in this case the Court concludes that Directv is entitled to $319.96 in attorneys' fees, calculated as $25 to review the Complaint, $85.00 for time spent by the paralegal preparing the motion for entry of default, $170.00 for time spent by an attorney preparing the Motion for Default Judgment, and $39.96 for attorneys' fees incurred by Greer, Herz & Adams, L.L.P. *See Directv, Inc. v. Agee*, – F. Supp. 2d –, 2005 WL 3455263 (D.D.C. Dec. 12, 2005)

attorneys' fees in the amount of $319.96 and costs in the amount of $240.00.

**B.      Violation of 47 U.S.C. § 605(a)**

In its Complaint, Directv alleges that Defendant violated both 47 U.S.C. § 605(a) and 47 U.S.C. § 605(e)(4). Notably, however, in its Amended Motion for Default Judgment, Directv only seeks to recover for Defendant's violation of Section 605(a). (Pl. Mem. In Supp. pp. 1, 3-5). Section 605(a) provides in pertinent part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Any person aggrieved by a violation of Section 605(a) may bring a private civil action against the violator and seek damages under Section 605(e)(3)(C). *See* 47 U.S.C. § 605(e)(3)(C).

As noted above, upon entry of default the allegations in the complaint, except those relating to damages, are taken as true. Consequently, the Court takes as true the allegations that Defendant purchased: (1) one "UL PRO X Super Unlooper" from Computer Shanty; (2) three "Emulator complete with cables" from Computer Shanty; and (3) two "Netsignia 210 Programmer" from Computer Shanty, and "illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception or

---

(noting plaintiff's requested attorneys' fees are excessive in light of the repetition of similar litigation).

exhibition of Satellite Programming transmitted by Directv . . . [and] used such communications for their own benefit or for the benefit of others who were not entitled to such communications." (Compl. ¶¶ 20, 28). By making such allegations Directv has established a valid claim under Section 605(a) and is entitled to default judgment on this claim.

Having concluded that default judgment is warranted on this claim, the Court must now turn to the issue of damages. Damages for a violation of Section 605(a) are permitted as follows:

> The Court – (i) *may* grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section; (ii) *may* award damages as described in subparagraph (C); and (iii) *shall* direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B) (emphasis added). Subparagraph (C) provides as follows:

> Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses . . . **(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . .

47 U.S.C. § 605(e)(3)(C)(i)(II).

With regard to an injunction, the Court will permanently enjoin Defendant from receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing Directv's satellite transmissions in violation of Section 605(a). Moreover, as discussed in detail above, the Court has already concluded that Directv is entitled to attorneys' fees in the amount of $319.96 and costs in the amount of $240.00. That leaves the issue of statutory damages.

The award of statutory damages under Section 605(e)(3) is committed to the Court's discretion. *See DirecTV v. Haskell*, 344 F. Supp. 2d 761, 763-64 (D. Me. 2004); *DirecTV, Inc. v. Montes*, 338 F. Supp. 2d 352, 355 (D. Conn. 2004). Moreover, the statute does not make an

9

award of statutory damages mandatory, as evidenced by the use of the permissive term "may." 47 U.S.C. § 47 U.S.C. § 605(e)(3)(B)(ii) (stating that the court *"may* award damages as described in subparagraph (C)"). However, if the court decides to award statutory damages, such damages must be "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

Where courts have decided that an award of statutory damages are necessary, such courts have used various methods to calculate "just damages," including assessing the maximum statutory rate; estimating the amount of services the defendant pirated and applying a multiplier to that figure; adopting the plaintiff's estimate of the amount of services pirated; and, where there is no evidence of actual usage or commercial advantage, applying the statutory minimum for each pirated device. *See Haskell*, 344 F. Supp. 2d at 764; *Montes*, 338 F. Supp. 2d at 355. While using these methods, court have also considered a number of factors, including: (1) whether the defendant profited as a result of the violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damages will be sufficient to deter similar conduct; and (5) whether the damages are comparable to those awarded in similar cases. *See DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D. Ala. 2004). In sum, "'[i]n its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed.'" *Haskell*, 344 F. Supp. 2d at 764 (quoting *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F. 2d 829, 852 (11th Cir. 1990)).

In the instant case, Directv alleges that Defendant purchased: (1) one "UL PRO X Super Unlooper" from Computer Shanty; (2) three "Emulator complete with cables" from Computer

Shanty; and (3) two "Netsignia 210 Programmer" from Computer Shanty, which Defendant used to intercept or receive Directv's Satellite Programming and which resulted in benefitting Defendant or others not entitled to such communications. (Compl. ¶ 28). Directv further maintains that Defendant's violations of 47 U.S.C. § 605(a) "have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming, as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming." (*Id.* ¶ 30). Significantly, there is no allegation that Defendant profited from his violation of Section 605(a), no contention that Defendant's actions resulted in others violating Section 605(a), or willful or flagrant behavior on the part of Defendant. Consequently, the Court finds that the injunctive relief and payment of Directv's costs and fees as described above are sufficient deterrents. Therefore, statutory damages for Defendant's violation of Section 605(a) are not warranted in this case.

**C.     Abandonment of Claims**

As noted above, in addition to its 47 U.S.C. § 605(a) and 18 U.S.C. § 2511 claims, Directv asserted claims against Defendant for: (1) willful assembly or modification of devices or equipment, in violation of 47 U.S.C. § 605(e)(4); (2) theft of telecommunication service, in violation of N.C. Gen. Stat. § 14-113.5; (3) interception and disclosure of electronic communications, pursuant to N.C. Gen. Stat. § 15A-287; (4) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1; and (5) civil conversion.. Directv did not seek default judgment with regard to those claims. Consequently, the Court finds that those claims should be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.

## III.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Default Judgment is hereby **GRANTED** with regard to its claim under 18 U.S.C. § 2511.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment is hereby **GRANTED** with respect to its claim under 47 U.S.C. § 605(a).

**IT IS FURTHER ORDERED** that Plaintiff is awarded attorneys' fees in the amount of $319.96 and costs in the amount of $240.00.

**IT IS FURTHER ORDERED** that in light of Plaintiff's failure to pursue the remainder of its claims against Defendant, those claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant is permanently enjoined from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or committing or assisting in committing any violation of 18 U.S.C. § 2511.

**IT IS FURTHER ORDERED** that the entry of final judgment as to all claims against Defendant is appropriate at this time pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and there is no just reason for delay.

Signed: March 8, 2006

Richard L. Voorhees
Chief United States District Judge